EXHIBIT NO. <u>32</u>











Effective November 9, 2021

VT002763

# TABLE OF CONTENTS

I. Introduction ...........................................................................................................................................3

II. Student Rights and Responsibilities.............................................................................................4

III. Jurisdiction ..........................................................................................................................................5

IV. Definitions ...........................................................................................................................................6

V. Prohibited Conduct............................................................................................................................8

VI. Additional University Policies ....................................................................................................13

VII. Student Conduct Process .............................................................................................................14

VIII. Sanctions..........................................................................................................................................17

IX. Formal Hearing Appeals ...............................................................................................................19

X. Interim Measures and Administrative Actions.......................................................................20

XI. Student Conduct Records..............................................................................................................22

XII. Appendices .......................................................................................................................................25

VT002764

# I. Introduction

The Virginia Tech community is guided by the university's motto, Ut Prosim (That I May Serve), and is based on the fundamental values expressed in the Principles of Community: to nurture learning and growth for all community members, to encourage open expression, and to respect our differences and common humanity.

When a student accepts admission to Virginia Tech as an undergraduate, graduate, or professional student, they also accept membership in the university community and responsibility for upholding its shared values and expectations. The Student Code of Conduct outlines policies established by the university that set standards for students' behavior, along with procedures for adjudicating and sanctioning violations of these standards. The code applies to all students and student organizations at Virginia Tech, as defined in this document. The university reserves the right to make changes to the code at any time.

Authority to approve policies and procedures for student discipline, as outlined in the Student Code of Conduct, lies with Virginia Tech's governing body, the Board of Visitors, as authorized under the Code of Virginia. The Vice President for Student Affairs has responsibility for the university conduct system, with direct supervisory oversight of disciplinary matters assumed by the Office of Student Conduct, under the direction of the Director of Student Conduct. The director serves as the Chief Student Conduct Officer for the university.

The Student Code of Conduct does not apply to matters of academic integrity. For information on policies and procedures related to student academic integrity, please refer to the following:

- Undergraduate Academic Integrity
- Graduate Honor System
- Doctor of Veterinary Medicine Honor Code (Virginia-Maryland School of Veterinary Medicine)
- Doctor of Medicine Honor Code (Virginia Tech Carilion School of Medicine)

## The Office of Student Conduct and the University Conduct System

The Student Code of Conduct is overseen by the Office of Student Conduct. The university's conduct system supports the educational mission of the university by educating students about appropriate behavior and fostering a community in which students can flourish academically and personally.

The system assumes that students and student organizations have the capacity to assume responsibility for their own behavior and that the university has the authority to establish an internal structure for the enforcement of its policies and procedures, which students have agreed to accept by enrolling in the university. As part of its authority, Student Conduct may suspend or dismiss students from the university.

VT002765

Conduct matters are addressed by Student Affairs professionals who have been appointed as hearing officers by the Director of Student Conduct. These individuals each have significant education and training on student development, student discipline, and university policies and procedures.

### Additional Community-Specific Regulations

As part of their education and life at Virginia Tech, students may also be involved in organizations, programs, or other entities for which additional and separate standards and policies, including potential sanctions for violations, have been established. Students should be aware of additional policies that may apply to their involvement in certain programs, organizations, or communities, including but not limited to students in the Corps of Cadets, student athletes, members of certain Greek-letter organizations under the Office of Fraternity and Sorority Life, and students in certain colleges or programs, such as the Virginia Tech Carilion School of Medicine or the Virginia-Maryland College of Veterinary Medicine.

These policies and processes do not supersede a student's responsibilities under the *Student Code of Conduct*. In situations involving potential violations of policies in the *Student Code of Conduct* and community-specific policies, the student is accountable first to the university's *Code*. Additional sanctions may be issued by programs/organizations that address a student's participation or membership in those communities, specifically. Student Conduct is responsible for coordinating adjudication processes with these various entities, when appropriate.

## II. Student Rights and Responsibilities

As individuals, Virginia Tech students enjoy basic rights. As members of the university community, they also accept certain responsibilities.

### Rights

1. Students at Virginia Tech will be treated fairly and with dignity regardless of age, color, disability, sex (including pregnancy), gender, gender identity, gender expression, genetic information, national origin, political affiliation, race, religion, sexual orientation, or veteran status as described in university policy 1025.

2. Students at Virginia Tech enjoy those rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia. This includes activities protected under the First Amendment. In accordance with the Code of Virginia, incidents of disruption of constitutionally protected speech may be reported via the Speech on Campus webpage.

3. The Student Code of Conduct and the policies and procedures it outlines, under the administration of the Office of Student Conduct, provides an administrative process for resolving allegations of misconduct. This process includes certain procedural guarantees to ensure that students receive a fair and equitable resolution.

VT002766

**Responsibilities**

1. Students are responsible for understanding and following university policies and procedures, including the *Student Code of Conduct*, and for abiding by all applicable state, federal, and local laws.

2. University email is the primary means by which the university communicates with students; therefore, students are responsible for reading all official communications delivered to their university email address.

3. Students who are offered admission to Virginia Tech and choose to matriculate have a continuing duty to report to the Office of Student Conduct any arrests or convictions, other than minor traffic violations, as well as any protective orders issued against them. This duty applies regardless of where the arrest occurred and regardless of whether the university is in session at the time of the arrest or conviction. Students must notify Student Conduct in writing, using the Arrest Disclosure and Conviction Form,  within 10 business days of the incident that led to their arrest or within five business days of the incident that led to their conviction. Failure to comply with this continuing duty may result in disciplinary action under the *Student Code of Conduct.*

## III. Jurisdiction

**Enrollment Status**

For the purposes of disciplinary action, a "student" is defined as any individual who has accepted an offer of admission as an undergraduate, graduate, or professional student and who has not yet graduated or officially transferred to another institution.

If a student's enrollment lapses for more than one calendar year, based on a student's voluntary decision not to enroll, that student will no longer be subject to disciplinary action. However, students who are separated from the university for academic or disciplinary reasons are still considered students for disciplinary purposes, regardless of the duration of the separation.

**Student Organizations**

A student organization, as defined in this document (below), may be considered for disciplinary action if an incident(s) is determined to be an organizational activity, based on at least two of the criteria listed below. Student Conduct will consider the entirety of the information to determine whether to charge an organization.

- Any student serving as an executive officer of the organization who is aware of the incident sufficiently in advance of its occurrence to prohibit its taking place and takes no action to prohibit it.

- The incident involves the expenditure of any organizational funds.

- The incident involves or is actively or passively endorsed by a majority of the members of the organization.

- The incident occurs in property owned, rented, reserved, or used by the organization.

VT002767

- Members and/or non-members of the organization learned about the event through members or communication associated with the organization.
- The incident occurred as a result of individual members of the organization acting in the capacity as members of the organization.

Student leaders and members of organizations who are complicit in any violation of the *Student Code of Conduct* or who permit or condone behavior that violates the code may also be held accountable as individuals in addition to the organization.

### Location of Incidents

Students and student organizations that violate the *Student Code of Conduct* may be considered for disciplinary action whether the conduct occurs on or off university property.

The *Student Code of Conduct* may also apply to behavior conducted online or through an electronic medium. Students should also be aware that online postings such as blogs, web postings, chats and social networking sites are in the public sphere and are not private. The university does not regularly search for this information but may take action if and when such information is brought to the attention of university officials.

### Alleged Violations of Criminal Law

When conduct violates both criminal law and the *Student Code of Conduct*, disciplinary action may be taken by the university, irrespective and separate from criminal action. At the university's discretion, the Office of Student Conduct may proceed with disciplinary action prior to a criminal trial or postpone action until after trial.

## IV. Definitions

The following terms as used throughout the *Student Code of Conduct* are defined below. For definitions related to cases referred for formal adjudication under Title IX, refer to Appendix III.

| TERM | DEFINITION |
|------|------------|
| Advisor | An advisor is one person of a student's choosing and cost who may accompany a student throughout the conduct process. They may consult with the student but not speak on the student's behalf or participate actively in the process. |
| Aggravating Factors | An aggravating factor is information, used during sanctioning (i.e., *after* a violation has been determined to have occurred), that may increase the sanction. Some factors may include but are not limited to a student's past conduct record and the nature and severity of the behavior and its impact. |
| Appeal | An appeal is a written request for review of a hearing and findings, based on specific grounds. |
| Appellate Officer | An appellate officer is an employee of Virginia Tech, external to the Office of Student Conduct staff, designated by the Vice President of Student Affairs to review and respond to appeals. |

VT002768

| TERM | DEFINITION |
|------|------------|
| Charge(s) | A potential violation of the *Student Code of Conduct*. |
| Complainant | Any individual who has reported a potential violation of the *Student Code of Conduct*. |
| Conduct Officer or Hearing Officer | A conduct or hearing officer is an individual designated by the Director of Student Conduct to adjudicate cases involving allegations of conduct violations. |
| Conduct Referral | A report or complaint that alleges violations of the *Student Code of Conduct* by a student(s) or student organization(s). |
| Consent (general)* | Consent is generally defined as knowing, voluntary, and clear permission for something to occur. *For a more specific definition of consent in the context of sexual activity, please see the definition below. |
| Consent (in the context of sexual activity) | Consent is defined as knowing, voluntary, and clear permission by word or action, to engage in mutually agreed upon sexual activity. The existence of consent is based on the totality of circumstances, including the context in which the alleged consent occurred. Silence does not necessarily constitute consent and coercion, force, or threat of either party invalidates consent. <br>• Consent cannot be given where a person is incapacitated; or where a person has a disability; or is not of legal age to consent as defined by law. <br>• Consent to any one form of sexual activity cannot automatically imply consent to any other forms of sexual activity. Consent can be withdrawn at any time. <br>• Previous relationships or prior consent cannot imply consent to future sexual acts. |
| Incapacitation | Incapacitation includes but is not limited to being asleep, drugged, intoxicated, or unconscious. |
| Mitigating Factors | A mitigating factor is information, used during sanctioning (i.e., *after* a violation has been determined to have occurred), that may decrease the sanction. Some factors may include but are not limited to a student's past conduct record and steps taken to remedy their behavior |
| Notice | Written notice of the alleged violations of the Code. Notice will be presumed to have been furnished when the notice is sent to the student's Virginia Tech email address or, when appropriate, provided at a prehearing meeting. |
| Preponderance of the evidence | The Office of Student Conduct uses preponderance of the evidence to determine whether or not a student has violated a policy in the *Student Code of Conduct*. This determination is made based on the information available to determine if it is more likely than not that a violation occurred. |

VT002769

| TERM | DEFINITION |
|---|---|
| Respondent | Any student or student organization alleged to have violated the *Student Code of Conduct.* |
| Student | For the purposes of disciplinary action, a "student" is defined as any individual who has accepted an offer of admission as an undergraduate, graduate, or professional student and who has not yet graduated or officially transferred to another institution. |
| Student Organization | For the purposes of disciplinary action, a "student organization" includes Registered Student Organizations (RSO), Extended Campus Student Organizations (ECSO), and University Chartered Organizations (UCSO), as defined in university policy 8010. |
| University Official | A university official is any person given authority by the university to perform administrative or professional responsibilities, including, but not limited to university police officers, resident advisors, graduate/ teaching assistants, administrative support staff, faculty, etc. |
| University Property or University Facilities | University property or university facilities are any location, either permanent or temporary, owned or leased by Virginia Tech, and includes satellite campuses and offices. This includes, but is not limited to, the buildings, grounds, and the surrounding perimeters, including the parking lots, field locations, classrooms, alternate work or class locations, and university owned or leased vehicles. |
| Witness | A witness is a person who provides relevant information about an incident in a hearing or through a written statement. Character witnesses are not generally considered relevant. |

## V. Prohibited Conduct

### Alcohol and Other Drug Offenses

- Alcoholic Beverage: Improper use of alcohol as defined by the regulations of the Commonwealth of Virginia and the university, including but not limited to underage possession/consumption, public intoxication (regardless of age), providing alcohol to any underage person, or any violation of university alcohol regulations, as outlined in Appendix I.

- Drugs: Possessing, using, manufacturing, selling, or misusing any substance and/ or possession of drug paraphernalia in violation of state or federal law.

  - Marijuana (Cannabis): Virginia law permits adults aged 21 or older to possess, use, and grow marijuana under certain circumstances; however, federal law continues to prohibit it and requires institutions of higher education that receive federal funds, including financial aid, to have policies prohibiting marijuana on university property or at university-sponsored off-campus events.

VT002770

Therefore, in accordance with federal and state laws, Virginia Tech prohibits the following conduct related to marijuana. (Additional information is available in Appendix II):

- Possession or use of any form of marijuana for any purpose, including medical or recreational use, on university property or at university-sponsored events off campus. This includes but is not limited to smoking, consuming edibles, and using vaporizers. "Use" includes being under the influence of marijuana.

- Possession of marijuana paraphernalia on university property or at university-sponsored event off campus.

- Improper possession or use of marijuana off university property (with the exception of university-sponsored events) as defined by the regulations of the Commonwealth of Virginia, including but not limited to possession/use under the age of 21, possession of greater than 1 ounce, consuming in public, and selling, as outlined in Appendix II.

- <u>Driving Under the Influence</u>: Operating or attempting to operate a motor vehicle, bicycle, or other personal transportation device while intoxicated or impaired by alcohol or other drugs.

## Offenses Against People

- <u>Abusive Conduct</u>: The use of physical force against an individual or any acts that cause physical harm; threats, including words or actions, that may cause a person reasonable apprehension of imminent physical harm.

- <u>Endangerment</u>: Actions that intentionally or recklessly endanger the health, safety, or well-being of oneself or another person or group.

- <u>Harassment</u>: Unwelcome conduct not of a sexual nature that is sufficiently severe, pervasive, or persistent that it could reasonably be expected to create an intimidating, threatening, or hostile environment that limits the ability of an individual to work, study, or participate in the activities of the university. *Note: the Code also includes a Gender-Based Harassment policy.*

- <u>Hazing</u>: Any mental or physical requirement, request, or obligation placed upon any person for the purpose of admission, initiation, or continued association with a group or organization that could cause discomfort, pain, fright, disgrace, or injury; that is personally degrading; or that violates any federal, state, local statute, or university policy, the willingness of an individual to participate in such activity notwithstanding. Additional information is available in Appendix IV.

- <u>Stalking</u>:  Repeated contact of another person not based on gender when the contact is unwanted and may cause the other person reasonable apprehension of imminent physical harm or cause substantial impairment of the other person's ability to perform the activities of daily life. *Note: the Code also includes a Gender-Based Stalking policy.*

VT002771

- <u>Recording and/or Distribution of Audio/Visual Material Without Consent</u>: Making, attempting to make, sharing, or distributing an audio and/or visual recording of any person(s) without the knowledge and consent of all participants subject to such recordings, in locations where there is a reasonable expectation of privacy, and when the action is likely to cause injury, distress, or damage to one's reputation.

- <u>Gender-Based Violence</u> (these policies apply in cases outside of the jurisdiction of Title IX; for Title IX policy definitions, refer to <u>Appendix III</u>):

  - <u>Sexual Violence</u>: Physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent. Sexual violence includes rape, sexual assault, sexual battery, and sexual coercion.

    - <u>Sexual Assault</u>: Actual or attempted sexual contact with another person without that person's consent.

    - <u>Sexual Battery</u>: Intentional touching of another person's intimate parts without the person's consent; or other intentional sexual contact with another person without that person's consent.

    - <u>Sexual Coercion</u>: Using physical or verbal aggression or pressure to force or attempt to force a person to touch another person's intimate parts without that person's consent.

    - <u>Rape</u>: Penetration, no matter how slight, of (1) the vagina or anus of a person by any body part of another person or by an object, or (2) the mouth of a person by a sex organ of another person, without that person's consent.

  - <u>Gender-based Harassment</u>: Acts of verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex or sex-stereotyping, even if those acts do not involve conduct of a sexual nature.

  - <u>Sexual Exploitation</u>: An act or acts committed through non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, financial gain, personal benefit or advantage, or any other non-legitimate purpose. The act or acts of sexual exploitation are prohibited even if the behavior does not constitute one of the other sexual misconduct offenses.

  - <u>Domestic Violence</u>: A pattern of abusive behavior that is used by an intimate partner to gain or maintain power and control over the other intimate partner. Domestic violence can be physical, sexual, emotional, economic, or psychological actions or threats of actions that influence another person. This includes any behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, or wound someone.

VT002772

▸ <u>Dating Violence</u>: Acts of physical or sexual abuse committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim.

- The existence of such a relationship shall be determined based on the reporting party's statement and with consideration of the length of the relationship, the type of relationship and the frequency of interaction between the persons involved in the relationship.

- Dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse, but does not include acts covered under the definition of domestic violence.

▸ <u>Gender-Based Stalking</u>: Repeatedly contacting another person when the contact is unwanted. Additionally, the contact may cause the other person reasonable apprehension of imminent physical harm or cause substantial impairment of the other person's ability to perform the activities of daily life. Contact includes but is not limited to communicating with (either in person, by phone, or by computer) or remaining in the physical presence of the other person.

## Offenses Against Property

- <u>Damage or Destruction</u>: Intentional, reckless, and/or unauthorized damage to, destruction of, tampering with, or vandalism of property.

- <u>Fire Safety</u>: The misuse of or tampering with firefighting equipment, unauthorized burning, disregarding fire alarm signals, deliberately initiating a false alarm or, tampering with fire detection or suppression equipment.

- <u>Theft</u>: Theft, attempted theft, or possession of stolen property.

- <u>Unauthorized Entry</u>: Entering, attempting to enter, or being present in buildings, residences, public or private property, and/or facilities or other areas without proper authority.

## Offenses Against the Community

- <u>Disorderly or Disruptive Conduct</u>: Engaging in disorderly or disruptive conduct that interferes with university, community, or individual activities, including but not limited to studying, teaching, research, and university administration.

- <u>Public Exposure</u>: Any act or attempted act of public nudity or urinating/defecating in public.

- <u>Hazardous Materials</u>: Unauthorized possession or use of fireworks, explosives, or hazardous and potentially hazardous materials.

- <u>Weapons</u>: Unauthorized possession, use, or storage of firearms, ammunition, or weapons on university property at any location, either permanent or temporary,

VT002773

owned or leased by Virginia Tech. Refer to Virginia Polytechnic Institute and State University Policy and Procedures No. 5616 for additional information.

## Offenses Against the University

- **Failure to Comply**: Failure to comply with a request and directives of university officials acting within the scope of their authority, including but not limited to the following: failure of a student to present their university identification card, failure to keep or attend a required meeting, and failure to leave an area when requested by an authorized university official. Upon the request of the student questioned, university officials must identify themselves and state the source of their authority.

- **Furnishing False Information**: Knowingly giving false information to a university official who is performing their official duties, including but not limited to perjury in a conduct hearing.

- **Interference with University Complaint Processes**: Attempting or actively influencing, impeding, intimidating, interfering, coercing, or retaliating against any person involved in a potential, actual, or past student complaint in a formal university complaint process.

- **Involvement in a University Violation**: Presence during any violation of the *Student Code of Conduct* and/or other university policies in such a way as to condone, support, or encourage that violation. Students who anticipate or observe a violation of university policy are expected to remove themselves from participation and are encouraged to report the violation.

- **Visitation/Guest Policies**: Students or student organizations will be held responsible for the conduct of their guests and are expected to inform them of all university regulations, including but not limited to Housing and Residence Life policies.

## Other Prohibited Conduct

- **Actions Leading to the Conviction of Criminal Offenses**: Any student convicted of a criminal offense is subject to university disciplinary action.

- **Failure to Observe Rules and Regulations**: Failure to observe rules and regulations issued by the university that are not listed specifically as "Prohibited Conduct" in the document, including but not limited to regulations linked above in the "Additional University Policies" and "Additional Community Specific Regulations" sections.

- **Forgery or Fraud**: Forgery or fraud, including attempts to obtain any item of value under false pretenses, falsification of official university documents, or possession of forged or altered identification or another person's identification.

- **Gambling**: Participation in any form of illegal gambling.

VT002774

**Statement on Sanction Enhancements for Policy Violations Motivated by Bias**

Any violation of the Virginia Tech Student Code of Conduct found to be motivated by an individual's age, color, disability, sex (including pregnancy), gender, gender identity, gender expression, genetic information, national origin, political affiliation, race, religion, sexual orientation, or veteran status (as stated in Virginia Polytechnic Institute and State University Policy and Procedures No. 1025) will be deemed an aggravating factor and will subject the student to a sanction more severe than would be imposed in the absence of such motivation.

This sanction enhancement will not apply in cases in which protected classes are specifically addressed within the language of the policy, such as gender-based violence or gender-based stalking.

**Statement on Self-Reporting and Bystander Intervention**

Virginia Tech recognizes that the health and safety of students is of utmost importance. Therefore, if someone requires assistance for themselves or others because of alcohol or drug use, we want them to call for help. If medical assistance is sought, Student Conduct will not pursue conduct charges against the individual or organization who sought assistance, or the individual in need of assistance. However, Student Conduct will still require students to attend a meeting with a hearing officer to discuss the incident and will assign substance-related and other educational assignments to the involved parties.

Violations having a significant individual or community impact and students with prior violations that demonstrate an actual, potential, or perceived pattern of behavior are not likely to have outcomes that are mitigated and are not likely to be protected under this policy.

**Statement on Reports of Sexual Harassment and Gender-Based Violence and Immunity for Use of Alcohol or Other Drugs**

Virginia Tech seeks to remove any barriers to reporting incidents of sexual harassment and gender-based violence. Therefore, any student, whether the complainant or a third party, who makes a good-faith report of sexual harassment or gender-based violence will be immune from disciplinary action for their personal consumption of alcohol or other drugs occurring at the time of the reported incident.

## VI. Additional University Policies

The *Student Code of Conduct* is intended to include other rules, regulations, and policies issued by the university that pertain to students and student organizations. Violations of these policies are actionable under the *Student Code of Conduct* when the violation warrants a process or sanction beyond what is available in these policies. Additional policies include but are not limited to the following:

- Dining Policies
- Housing and Residence Life Policies

VT002775

- Housing and Dining Contract
- Parking and Traffic Regulations
- Student ID Cards
- University-Level Policies (see the university's policy library at policies.vt.edu/policy-library for a full list of policies relevant to students; the following policies are those most frequently referenced):

  - Acceptable Use and Administration of Computer and Communications Systems
  - Arrest, Conviction, and Protective Order Disclosures
  - Bicycles and Personal Transportation Devices
  - Campus and Workplace Violence Prevention
  - Facilities Usage and Events
  - Harassment, Discrimination, and Sexual Assault
  - Operation of Unmanned Aircraft Systems
  - Sales, Solicitation, and Advertising on Campus
  - Serving Alcohol
  - Smoking
  - Social Media
  - University Names and Trademarks

# VII. Student Conduct Process

The Office of Student Conduct uses the following procedures to address behavior that is alleged to have violated university policy. It should be noted that not all situations are of the same severity or complexity. Thus, these procedures are flexible and are not exactly the same in every situation, though consistency in similar situations is a priority. The procedures used in particular cases are determined at the sole discretion of the Office of Student Conduct.

The university conduct process is an administrative function and differs from civil or criminal legal proceedings. In some situations, students may be involved in both legal and university systems.

## Step 1: Submitting a Conduct Referral/Complaint

Any student, faculty member, staff member, administrator, community member, or concerned party may submit a complaint, known as a "conduct referral," to the Office of Student Conduct. While there is no time limit for referrals, Student Conduct encourages people who plan to bring a complaint against a Virginia Tech student to do so as quickly and prudently as possible.

VT002776

Student Conduct will review the conduct referral to determine if there is information regarding behavior that may violate the *Student Code of Conduct* and thus warrants resolution within the conduct system.

This review may include a meeting with the person(s) who submitted the complaint and/or an investigation to gather additional information.

Potential outcomes of the review include the following:

- A determination that interim measures or administrative actions should be imposed in order to maintain safety or order.

- A determination that an investigation is needed to gather additional information to identify an appropriate avenue for resolution.

- A determination that the matter should be referred to another office or process.

- A determination that there may be a potential violation of the *Student Code of Conduct* and that an agreed resolution is the appropriate avenue for resolution.

- A determination that there may be a potential violation of the *Student Code of Conduct* and that a formal hearing is the appropriate avenue for resolution.

- A determination that the complaint may not involve a potential policy violation but is related to a conflict; in this case, Student Conduct may offer voluntary mediation, facilitated dialogue, or conflict coaching.

- In some cases, at Student Conduct's discretion, students will be invited to participate in an educational conversation about the concerns raised in the complaint, even when Student Conduct determines that adjudication is not appropriate.

- A determination that there is insufficient information to pursue the complaint.

- A determination that the behavior alleged, even if proven, would not violate the *Student Code of Conduct.*

<u>Formal Complaints of Sexual Harassment and Gender-Based Violence</u>

Formal complaints of sexual harassment and/or gender-based violence should be reported to the university's Title IX Coordinator. They will follow the steps detailed in Virginia Tech's <u>Title IX Reporting and Grievance Procedures for Sexual Harassment and Violence</u> to offer supportive measures and to determine whether a complaint falls within the scope of Title IX, as defined by the federal Department of Education, or under the policies in Virginia Tech's *Student Code of Conduct.*

Complaints that have been determined to fall under the policies in the *Student Code of Conduct* will be referred to the Director of Student Conduct. Per the process outlined above, the Director will review the complaint and, if appropriate, may request the Office for Equity and Accessibility conduct a thorough, impartial investigation into the complaint. Upon completion of an investigation, the Director will determine how the matter should be resolved.

VT002777

**Step 2: Resolution**

After reviewing a conduct referral, Student Conduct will determine an appropriate resolution process from among the following:

Agreed Resolution: An agreed resolution is an informal resolution option in which the respondent meets with a hearing officer to discuss an incident and collaborates with the hearing officer to determine whether they violated a policy and, if so, what sanctions may be appropriate. If the respondent agrees to the resolution, they waive the right to a formal hearing, and the resolution is final. If an agreement cannot be reached, the respondent has the option to move forward to a formal hearing with a new hearing officer.

Formal Hearing: In a formal hearing, the hearing officer(s) determines whether the respondent violated policies in the *Student Code of Conduct*, along with appropriate sanctions, if necessary. In formal conduct hearings, the respondent is entitled to the following procedural guarantees and opportunities:

- To receive written notice of charges at least five (5) business days in advance of the hearing and in reasonable detail to allow the respondent to prepare for the hearing.

- To share their version of events and refute any information presented.

- To present witnesses/witness statements and question any witnesses present.

- To remain silent or not participate.

- To be accompanied by an advisor.

- To challenge the objectivity of a hearing officer(s), given reasonable cause to believe that they may be biased or have a conflict of interest.

- To appeal if there is a loss of privilege (i.e., suspension, dismissal, denial of housing, etc.), provided there are appropriate grounds as found in the Student Conduct Formal Hearing Appeals section.

In addition to witnesses who may be called by respondents participating in formal hearings, hearing officers may also call witnesses whom they believe are relevant for determining outcomes in a given case. The outcome of a formal hearing is final unless it qualifies for appeal, as outlined in the Formal Hearing Appeals section. If a respondent or complainant fails to attend a formal hearing after receiving proper notice, the case may be heard in their absence.

Formal Title IX Adjudication and Gender-Based Violence Hearings: Cases referred for adjudication by the Title IX Coordinator for a formal Title IX hearing are conducted in accordance with the policies and procedures outlined in Appendix III, as required by the U.S. Department of Education.

Gender-based violence cases that fall outside of the jurisdiction of Title IX are adjudicated through the gender-based violence policies and formal hearing process outlined by the *Student Code of Conduct,* as described above. These formal hearings are conducted by a team of two hearing officers. In these hearings, both the complainant and respondent receive the same procedural guarantees outlined above, and both parties may appeal, regardless of the outcome. Appeals must be based on appropriate grounds.

VT002778

<u>Adaptable Conflict Resolution (ACR)</u>: When complaints/referrals to Student Conduct are based in conflict between individuals or groups, Student Conduct may offer adaptable conflict resolution (ACR) options to students, including mediation, facilitated dialogue, or conflict coaching. Participation in ACR is optional, and in the case of mediation or facilitated dialogue, all parties must agree to participate. ACR options may result in a mutually satisfactory agreement between the parties, but it is not required.

<u>Educational Conversation</u>: An educational conversation is a discussion between a student and hearing officer in Student Conduct regarding behavior that does not rise to the level of a policy violation but is, nevertheless, inappropriate or having a negative impact on the student or others or, if it continues, may become a policy violation. These conversations are educational and supportive in nature and are intended to help the student reflect and to connect them with resources, when needed.

## Additional Information

<u>Standard of Proof</u>
The preponderance of the evidence standard will be used to determine responsibility for violations of policies in the *Student Code of Conduct.* Preponderance of the evidence means that based on the information available to determine if it is "more likely than not" that a violation occurred.

## VIII. Sanctions

Student Conduct sanctions are designed to promote safety, individual accountability, and reflection. Whenever possible, Student Conduct makes efforts to educate students and to foster personal and academic success. When assigning sanctions, hearing officers consider the type and nature of any policy violation(s), including mitigating or aggravating factors, as well as the student's prior conduct record. Sanctions are generally cumulative in nature. One or more of the following sanctions may be imposed when a student or student organization is found responsible for violating the *Student Code of Conduct:*

| SANCTION | DESCRIPTION |
| --- | --- |
| Formal Warning | A formal written notice that the student or student organization has violated a policy in the Student Code of Conduct and that further violations may result in more serious conduct action. Students or student organizations who receive a formal warning are still considered in good conduct standing with the university. |
| Probation | A specified period of time during which the student or student organization is considered not in good conduct standing with the university. Further violations during that time period may result in more serious conduct action, including a potential separation from the university. |

VT002779

| SANCTION | DESCRIPTION |
|---|---|
| **Deferred Suspension** | A specified period of time during which the student or student organization is considered not in good conduct standing with the university. Violations for which deferred suspension is assigned are those that are serious enough to warrant suspension from the university, but due to mitigating factors, the student or student organization is given the opportunity to remain enrolled at the university, provided they do not violate further policies. The suspension may take effect if they violate additional policies during the period of deferred suspension. |
| **Suspension** | A specified period of time during which the student or student organization is separated from the university. During the suspension period, the student does not have the rights and access to privileges associated with being a student, which includes eligibility to be academically enrolled at Virginia Tech or transfer credits earned at other institutions during the period of disciplinary suspension. For student organizations, the university will withdraw recognition for the duration of the suspension. A student or student organization must complete all assigned sanctions and receive permission from Student Conduct to be eligible to re-enroll. For a student who has completed their academic work but whose degree has not yet been conferred, their degree may be withheld for the duration of the suspension period. |
| **Deferred Dismissal** | A specified period of time during which the student or student organization is considered not in good conduct standing with the university. Violations for which deferred dismissal is assigned are those that may warrant permanent dismissal, or expulsion, from the university, but due to mitigating factors, the student is given the opportunity to maintain student status with the university, provided they do not violate further policies. The dismissal may take effect if the student violates additional policies during the period of deferred dismissal. A deferred dismissal is often accompanied by a suspension or other conduct sanctions. |
| **Dismissal** | A formal notice that the student or student organization is permanently dismissed, or expelled, from the university, with no opportunity to re-enroll. For student organizations, the university permanently withdraws recognition. |
| **Denial of Privileges or Associations** | A specified period of time during which the student is denied certain privileges or associations, including but not limited to termination of the housing contract, removal from athletic events, loss of recreational sports privileges, network access, or access to certain university facilities. Student organizations may also have their social function privileges revoked. |

VT002780

| SANCTION | DESCRIPTION |
|---|---|
| Restitution | Requirement for the student to make restitution for damage to university property, which, at the discretion of Student Conduct and the associated university department, may be in the form of monetary payment or community service. |
| Educational, Community, and Wellness Activities | Assignments or activities designed to provide opportunities for reflection, learning, and growth as well as to connect the student with resources to support their well-being and personal and academic success. |

**Failure to complete sanctions**

Students are expected to complete their conduct sanctions, including educational sanctions, within the timeframe and guidelines specified by their hearing officer. Failure to complete sanctions may result in additional conduct action and sanctions.

## IX. Formal Hearing Appeals

The respondent has the opportunity to appeal the outcome of a formal hearing if it results in a loss of privilege, including suspension, dismissal, or denial of certain university privileges, including but not limited to housing, network access, or athletic privileges. For gender-based violence hearings, both the complainant and respondent have the opportunity to appeal, regardless of the outcome of the hearing and whether or not there is a loss of privilege. Sanctions take effect immediately, pending the appellate officer's decision or the end of the appeal period.

The appeal process for formal Title IX hearings is outlined in Appendix III.

**Grounds for appeal**

Appeals are not re-hearings; therefore, appeal requests are limited to the following grounds:
1. Denial of procedural guarantees
2. Significant and relevant new information that was not available at the time of the hearing
3. Unduly harsh or arbitrary findings or sanctions.

Appeals submitted that do not have sufficient grounds in one of these areas will be denied.

**Potential Outcomes of an Appeal**

The appellate officer will review the appeal and may:
1. Uphold the original decision and sanctions
2. Uphold the original decision and either decrease or increase the sanction
3. Vacate a finding
4. Send the case back to Student Conduct for a new partial or full hearing.

**Timeframe to submit an appeal**

The respondents (and complainants, in the case of gender-based violence hearings) have seven (7) business days from the date of the decision to submit the appeal. The date the decision is given is considered the first day of the appeal period. Appeals submitted after the deadline will not be accepted except in extenuating circumstances, as determined by Student Conduct.

**Format of appeal**

The appeal is a written request submitted by the student for a review of the original case. The student should include which grounds for appeal they believe apply and any information the student wants considered should be included in the written document. The burden is on the appealing student or student organization to demonstrate why the finding or sanction should be altered.

**Appellate Officers**

An appellate officer will be designated by the Assistant Vice President for Student Affairs, who serves as the university's Chief Appellate Officer. All appellate officers are external to the Office of Student Conduct.

## X. Interim Measures and Administrative Actions

Based on the nature and circumstances of the referral, the university may authorize interim measures or take administrative action to maintain safety and order and to ensure compliance with university processes and directives, including the following:

Holds on Student Account: Student Conduct may apply a hold on a student's account, which will prevent course registration, graduation, and access to transcripts. Situations in which holds may be applied include but are not limited to the following:

1. The student fails to complete sanctions by assigned deadlines
2. The student has been issued an interim suspension
3. The student is suspended and has a pending re-enrollment meeting
4. The student has a pending conduct matter that must be resolved

Interim Suspension: The university retains the authority to impose an interim (immediate) suspension from the university and/or selected campus facilities with proper notice if such action is necessary to preserve the safety of persons or property. During an interim suspension, a student may not participate in academic, extracurricular, or other activities of the university except as may be authorized by the Assistant Vice President for Student Affairs or their designee. In this instance, the students will be afforded an interim suspension meeting and the opportunity to show why their continued presence on campus does not constitute a threat to themselves, others, or property. The interim suspension meeting is separate from the student conduct process. The student will have five (5) business days within which to request an interim-suspension meeting. An opportunity to meet with Student Conduct for a final resolution will be provided as soon as possible.

VT002782

- Procedures: The following steps explain the procedure for imposing an interim suspension:

  ▸ Initiating an Interim Suspension: When a situation, as defined above, occurs, the responding university official contacts the Threat Assessment Team or the Assistant Vice President for Student Affairs or their designee to assess the situation and determine if an interim suspension is appropriate.

  ▸ Notification of an Interim Suspension: The student will be sent an interim suspension letter immediately, which states that the student is either suspended from the university and/or suspended from all or selected campus residential facilities until a final resolution is determined through the Student Conduct process.

  ▸ Interim-Suspension Meeting: The student can immediately request an interim suspension meeting to be conducted by the Assistant Vice President for Student Affairs or his/her designee. The interim suspension letter will contain instructions on how to request a review. Those present at the meeting may include the responding university official and other witnesses as deemed appropriate by the Assistant Vice President for Student Affairs. During the review, the student will be given an opportunity to demonstrate why his or her continued presence on campus does not constitute a threat to themselves, others, or property. As part of the review, the student may be required to submit to an immediate medical/psychological evaluation. The student will be evaluated by the director of the Cook Counseling Center or his/her designee.

  ▸ Timeframe to Request Interim-Suspension Review: A student must request a meeting within five (5) business days; after that time frame, the interim suspension and/or suspension from campus residential facilities and all student activities will remain in effect until the matter is resolved through the student conduct process.

  ▸ Decision: The decision made after the interim suspension meeting will be final. There will be no additional appeal.

  ▸ Student Conduct Process/Resolution: Interim suspension information will be shared with Student Conduct and others who need to know. Student Conduct will determine and schedule, as soon as possible, the appropriate resolution process to determine whether the student is responsible for violating university policy and, if so, appropriate sanctions.

No Contact Order: In certain situations, Student Conduct may issue no contact orders to students for a period of time to prevent communication between two or more students if it is determined that contact between the parties may perpetuate or escalate behavior that may interfere with a person's rightful actions, including but not limited to their safety and security. No contact orders prevent students from face-to-face, electronic, or third-party contact. If a no contact order is issued, all parties involved will receive the order.

VT002783

A student who violates a no contact order may be subject to conduct action; if a violation of the order threatens the safety of persons or property, an interim suspension may be imposed.

The process for no contact orders includes the following:

1. No contact orders may be requested by students, or Student Conduct may issue them independently of a request.

2. Before issuing an order, Student Conduct may request additional information to determine whether it is warranted.

3. Student Conduct may decline to issue an order.

4. A student who has requested an order be issued may subsequently request that it be lifted.

5. Student Conduct has the discretion to lift a no contact order at any time if it is determined that the circumstances under which it was issued are no longer present.

Cease Operations Order: In certain situations involving allegations of policy violations by student organizations that may involve potential impacts on the safety of persons or property or significant disruption to the community, Student Conduct may issue a cease operations order, which places restrictions on the organization while the matter is resolved. Examples of situations in which cease operations are issued include but are not limited to the following: hazing; alcohol distributed to underage members or guests; and disorderly or disruptive behavior, such as serious or ongoing violations of noise regulations in the Town of Blacksburg. The cease operations will remain in place until the matter is resolved by Student Conduct. Cease operations restrictions may include but are not limited to the following:

1. The organization is to stop operating in full, including meetings, communication, events, etc.

2. The organization is to stop hosting events with alcohol present.

3. The organization is to stop recruitment or holding meetings, events, or activities with new or prospective members.

## XI. Student Conduct Records

Violations of the *Student Code of Conduct* are maintained in a student's conduct record for a period of five years from the date of the incident. This record is maintained electronically by the Office of Student Conduct and is separate from a student's academic transcript, though it is considered part of a student's educational record.

Records of formal Title IX hearings will also be maintained by the Office for Equity and Accessibility for a period of seven years, as described in the Title IX Reporting and Grievance Procedures for Sexual Harassment and Violence.

VT002784

Student conduct cases involving student organizations are not private. Accordingly, hearing notification and sanction letters are sent to organizational advisors and (inter)national headquarters.

## Information Sharing within the University

Notification of student conduct outcomes or decisions is given to individuals in the university with a need to know. Other university agencies or organizations may be required to obtain a written release from students before they can receive notification.

## Notification to Victims of Crimes of Violence

Victims of crimes of violence (including abusive conduct and gender-based violence) involving student respondents will be notified of the outcome and sanction(s). In Title IX matters, complainants will also be notified of the outcome and relevant sanctions for non-violent violations of gender-based violence policies.

## Parental Notification

Parents/guardians of students under age 21 will be notified if their student is found responsible for a violation of the alcoholic beverage or illegal drug policies.

## Student Conduct Transcript Notations in Cases of Suspension and Dismissal

When a student is suspended or permanently dismissed from Virginia Tech, a notation will be included on the student's academic transcript stating, "suspended [or dismissed] for a violation of the Student Code of Conduct." Suspension notations will be removed once the student completes the term and conditions of the suspension, including all assigned sanctions. In cases involving allegations of gender-based violence, a notation will also be placed on the transcript of a student who withdraws from Virginia Tech while under investigation. This notation will be removed if the student is subsequently found not responsible for violating policies in the *Student Code of Conduct.* Students may also petition to have transcript notations expunged, as outlined in the following section.

Lesser sanctions, such as warnings and probation, do not affect a student's academic standing and do not appear on the official transcript.

## Petitions for Expungement

The university offers two opportunities for students to petition for expungement of documentation related to their disciplinary record:

1. In cases involving low-level violations of the *Student Code of Conduct*, such as cases in which a student received probation, the student may petition the Office of Student Conduct to have the record of that case expunged prior to the end of the five-year period (early record expungement).
2. In cases involving sanctions of suspension or permanent dismissal resulting in a notation on the academic transcript, the student may petition the Office of Student Conduct to have the notation on their academic transcript expunged. Expungement of the notation is not the same as expungement of the entire case record.

VT002785

The process and timeline for each opportunity is outlined below.

1. <u>Early Record Expungement for Low-Level Policy Violations:</u> Students or graduates may petition Student Conduct to have the documentation of their cases involving low-level policy violations, such as those resulting in probation, "expunged" from their conduct record prior to the end of the five-year period. "Expungement" in this situation means that while the record is maintained by Student Conduct, per state and federal law, the record will not be shared with third parties, except as required by law. For example, a student applying to transfer to another institution may need to obtain a certified copy of their disciplinary record as part of an admissions application; if a record has been expunged, the documentation provided for the application will not include information about that incident.

   The opportunity to request expungement reflects the student-centered and learning-focused values on which the Student Conduct process is based. Namely, we believe that students can learn and grow by reflecting on their decisions and examining their values.

   Cases involving more serious violations of policy and more significant sanctions may not be considered for early record expungement, including but not limited to the following cases: those resulting in suspension or dismissal, gender-based violence and gender-based stalking, drug distribution, or other offenses against people.

   An early record expungement applies only to records maintained by the Office of Student Conduct; records maintained by other offices or units, such as law enforcement and other university departments are not subject to expungement under this process.

   <u>Eligibility</u>: A student may petition to have cases expunged from their conduct record in the following circumstances:

   ‣ An undergraduate student is classified as a senior, is not on an active status sanction (e.g., probation), and has completed all assigned educational sanctions.

   ‣ An undergraduate student is classified as a freshman, sophomore, or junior, has been off of an active sanction (e.g., probation) for at least one full semester (i.e., fall or spring), and has completed all assigned educational sanctions.

   ‣ A graduate or professional student is not on an active status sanction (e.g., probation) and has completed all assigned educational sanctions.

2. <u>Transcript Notation Expungement for Cases Involving Suspension or Dismissal:</u>
   A student or former student may petition for a transcript notation to be expunged–or removed–from the academic transcript after a period of three years from the final resolution of the case if the student can show good cause. In cases involving suspension, the student must have completed the term of the suspension and all educational sanctions prior to submitting their petition. The Office of Student Conduct will work with former students who have outstanding educational sanctions to determine options, which could include alternate sanctions that are mutually agreed upon, for fulfilling sanction requirements so that the individual may petition to have the transcript notation expunged.

   Expungement of the transcript notation is not the same as expungement of the entire case record.

VT002786

Submission of Expungement Petitions

To petition for expungement, a student or former student must complete one of the following forms, which include the opportunity to explain why they are a good candidate for expungement and what they have learned and/or how they have changed since the incident for which they were referred to Student Conduct.

Evaluation of Expungement Petitions

The Director of Student Conduct or their designee will review petitions for early record expungements as well as transcript notation expungements based on the criteria above and will submit a recommendation to the Assistant Vice President for Student Affairs or their designee for final approval.  The decision will be based upon the following criteria, as outlined in the petition application available on the Student Conduct website:

1. The nature of the violation(s) and the resulting impacts

2. The student's behavior after the violation(s) and their present demeanor

3. The student's demonstrated level of reflection and growth

After a petition is evaluated, the student will receive written notification of the decision. That decision will be final.

It is important to note that a student with an expunged record or transcript notation may still need to disclose information about their disciplinary history to third parties, including potential employers, other universities' admissions offices, a professional board, etc.

## XII. Appendices

### Appendix I: Additional Policies and Procedures Governing the Use of Alcoholic Beverages

Virginia Tech recognizes that the misuse and abuse of alcohol is a persistent social and health problem in our society and that it interferes with the goals and objectives of any educational institution. The university fully complies with the alcohol regulations of the Commonwealth of Virginia, and all state laws apply to Virginia Tech students and student organizations. Students or student organizations who violate the Alcoholic Beverage Policy in the *Student Code of* Conduct and any associated policies or guidelines will face disciplinary action. Sanctions will likely include substance-related education.

In compliance with the laws of the Commonwealth, and to maintain conditions conducive to learning, possession or consumption of alcoholic beverages on campus is only permitted according to the following provisions:

| LOCATION | DESCRIPTION |
| --- | --- |
| Residence hall room | In the privacy of a student room, alcoholic beverages are permitted for those persons 21 years of age or older in accordance with state law, provided that at least one of the 21-year-old residents of the room is present. |

VT002787

| Other locations in residence halls | Aside from the privacy of a student's room, possession or consumption of alcoholic beverages in any area of residence halls, including suite living rooms, is forbidden. |
|---|---|
| Oak Lane | The Director of Fraternity and Sorority Life, in conjunction with the Director of Housing and Residence Life, determines regulations concerning the use of alcoholic beverages in the "Oak Lane Community" (also known as Special Purpose Housing) during events. |
| Corps of Cadets | The Commandant of Cadets establishes and publishes regulations to be observed by cadets regarding the possession and consumption of alcoholic beverages. This information is published in the Cadet Regulations Manual. |
| All residential locations | Kegs of any description in student rooms or residence halls, including Oak Lane, are prohibited. |
| All other university property | The possession and use of alcoholic beverages is prohibited on all other university property except in certain facilities that are fully registered with the Virginia Alcoholic Beverage Control Board (ABC). |

Alcoholic beverages are further governed by Virginia Polytechnic Institute and State University Policy and Procedures No. 1015.

For more information related to federal and state laws and regulations regarding alcohol or illegal drugs or prevention and substance-use programs available at Virginia Tech, please consult the website for Hokie Wellness, as well as the university's Drug and Alcohol Prevention Program document.

## Appendix II: Additional Information about Policies and Laws Governing the Use of Marijuana/Cannabis

Effective July 1, 2021, marijuana is legal in the Commonwealth of Virginia for both recreational and medical use. As an academic community committed to well-being, Virginia Tech recognizes that using marijuana may negatively impact students' academic performance, relationships, mental health, and career goals. Therefore, it is important for students to understand the policies and laws that govern marijuana possession and use, as well as the support resources that are available to address negative effects and potential misuse.

### Federal and State Laws and University Policy

1. Using or possessing marijuana or marijuana paraphernalia in any form is prohibited on all university properties and at university-sponsored off-campus activities. This prohibition includes, but is not limited to, smoking, edibles, and vaporizers.

VT002788

Although recreational and medical uses of marijuana are both legal in the Commonwealth of Virginia as of July 1, 2021, federal law continues to prohibit it. As an institution that receives federal funds, including federal financial aid, Virginia Tech is required to comply with all federal laws and regulations, including the Drug Free Schools and Communities Act, which requires institutions to have policies prohibiting possession, use, or cultivation of marijuana on university property or at university-sponsored off-campus events. Therefore, Virginia Tech will enforce prohibitions of marijuana on university property and at university-sponsored events off campus, and students who violate this policy will be subject to action under the Student Code of Conduct. Sanctions will likely include substance-related education.

2. Students at off-campus locations/properties and off-campus events that are not sponsored by the university are expected to abide by Virginia laws related to marijuana use, possession, or growth. These include, among others, the list below. This list serves only as an overview; students should refer to the Code of Virginia for the most updated and accurate description of the law.

   - Legal age: Legal possession, use, or cultivation is limited to adults 21 or older.
   - Quantity: Individuals may not possess more than one ounce (28 grams) or the equivalent amount of another marijuana product.
   - Home growth: Individuals may cultivate up to four marijuana plants; these plants must be marked and may not be visible from a public street or accessible to children.
   - Locations: Use of marijuana is not permitted in public spaces or on public school grounds.
   - Selling: Sales of marijuana are prohibited; however, an adult over 21 may "gift" up to 1 ounce to another adult over 21.
   - Driving: Using marijuana in any form is prohibited while driving or riding in a motor vehicle, as is having an "open container" of marijuana in the passenger area of the vehicle.

For information about education and support resources regarding marijuana, alcohol, and other drugs, please consult the website for Hokie Wellness, as well as the university's Drug and Alcohol Prevention Program document.

## Appendix III: Title IX Definitions and Formal Title IX Adjudication Process

Title IX Sexual Harassment means any of the following conduct on the basis of sex:

   - A university employee conditioning an educational benefit or service upon a person's participation in unwelcome sexual conduct (i.e. quid pro quo harassment);
   - Unwelcome conduct that a reasonable person would determine to be so severe, pervasive, and objectively offensive that it would effectively deny a person equal access to a university program or activity; or
   - Sexual Assault, Dating Violence, Domestic Violence, or Stalking, as each of those terms are defined below.

VT002789

The process for formal Title IX complaints, including definitions of terms and policies, reporting, investigations, and adjudication, is outlined fully in the university's Title IX Reporting and Grievance Procedures for Sexual Harassment and Violence, under the university policy 1026 on Title IX Sexual Harassment and Responsible Employee Reporting. The following excerpts include the policy definitions under Title IX, as well as the formal Title IX adjudication process for students, which is conducted by the Office of Student Conduct.

**Title IX Definitions**

<u>Complainant</u> means an individual who is alleged to be the victim of conduct that could constitute Title IX Sexual Harassment.

<u>Consent</u> means knowing, voluntary, and clear permission by word or action, to engage in mutually agreed upon sexual activity. The existence of consent is based on the totality of circumstances, including the context in which the alleged consent occurred. Silence does not necessarily constitute consent and coercion, force, or threat of either party invalidates consent.

- Consent cannot be given where a person is incapacitated due to drugs or alcohol; or where a person has a disability; or is not of legal age to consent as defined by law.
- Consent to any one form of sexual activity cannot automatically imply consent to any other forms of sexual activity. Consent can be withdrawn at any time.
- Previous relationships or prior consent cannot imply consent to future sexual acts.

<u>Dating Violence</u> means violence committed by a person: (a) who is or has been in a social relationship of a romantic or intimate nature with the victim; and (b) where the existence of such a relationship shall be determined based on a consideration of the following factors: (1) the length of the relationship; (2) the type of relationship; and (3) the frequency of interaction between the persons involved in the relationship.

<u>Domestic Violence</u> means felony or misdemeanor crimes of violence committed by: (a) a current or former spouse or intimate partner of the victim; (b) a person with whom the victim shares a child in common; (c) a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner; (d) a person similarly situated to a spouse of the victim under the domestic or family violence laws of Virginia; or any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of Virginia.

<u>Respondent</u> means an individual who has been reported to be the perpetrator of conduct that could constitute Title IX Sexual Harassment.

<u>Sexual Assault</u> means misconduct that meets the definition of Rape, Fondling, Incest, or Statutory Rape, as defined below:

- <u>Rape</u> means penetration, no matter how slight, of the vagina or anus of a person with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.

VT002790

- <u>Fondling</u> means the touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or temporary or mental incapacity.

- <u>Incest</u> means sexual intercourse between persons who are related to each other within degrees wherein marriage is prohibited by law.

- <u>Statutory Rape</u> means sexual intercourse with a person who is under the statutory age of consent.

<u>Stalking</u> means engaging in a course of conduct directed at a specific person that would cause a reasonable person to: (a) fear for the person's individual safety or the safety of others; or (b) suffer substantial emotional distress.

**Formal Title IX Adjudication Process**

When the Title IX Coordinator refers a case for formal adjudication, the Office of Student Conduct will hold a live hearing with cross examination to determine whether the respondent is responsible for the alleged conduct and to provide sanctions, as appropriate.

### A. Procedural Guarantees

In formal conduct hearings for Title IX formal complaints, the complainant and respondent are entitled to the following procedural guarantees and opportunities:

- To receive a copy of the final investigation report, including any attachments and supporting documents from the Title IX Coordinator or designee at least ten (10) days in advance of the hearing.
- To receive written notice of the date, time, location, participants, and policies charged at least five (5) business days in advance of the hearing to allow the parties sufficient time to prepare for the hearing.
- To be accompanied by an advisor of their choice, at their own cost, or to have an advisor provided to them by the Office of Student Conduct without fee or charge.
- To inspect and review, during the hearing, all evidence obtained during the investigation that is directly related to the allegations in the formal complaint.
- To present that evidence that supports or refutes the alleged conduct*
- To present witnesses, including fact and expert witnesses.
- To have their advisor conduct live cross-examination on the other party and any witnesses.
- To remain silent or to participate as they see fit, including full, partial, or no participation.
- To challenge the objectivity of a hearing officer(s), given reasonable cause to believe they may be biased or have a conflict of interest.
- To appeal, regardless of the outcome, based on the following grounds: (1) Procedural irregularity; (2) Significant and relevant new information that was not available at the time of the hearing; (3) The Title IX Coordinator, Investigator, or hearing officer(s) had a conflict of interest or bias, which affected the outcome; (4) Unduly harsh or arbitrary findings or sanctions.

VT002791

*Only evidence and information submitted prior to the final investigation report will be considered during at the hearing.

**B. Advisors**

At the hearing, each party may be accompanied by an advisor of their choice, at their own cost (e.g., parent, friend, attorney, etc.); if a party does not have an advisor, the university will provide one to them without fee or charge for the purposes of cross-examination. Advisors may not also serve as witnesses.

Advisors will be permitted to cross-examine (i.e., ask relevant questions and follow-up questions) the other party and any witnesses directly, orally, and in real time. The parties must use their advisors in this capacity, as they will not be permitted to ask questions personally.

Aside from cross-examination, advisors may not speak on the student's behalf or participate actively in the process. Advisors must follow the guidance of the hearing officers.

**C. Cross-Examination**

During the hearing, the parties' advisors will be permitted to ask relevant questions and follow-up questions, including those challenging credibility, of the other party and any witnesses. Cross-examination must be conducted directly, orally, and in real time. At no times will the parties directly conduct cross-examination.

<u>Relevance</u>
Questions asked during cross-examination must be relevant to the behavior and situation in question. Hearing officers will determine whether each question is relevant and, if they choose to exclude a question, explain why it is not relevant. The following topics/questions have been identified as automatic exclusions:

Questions or information about the complainant's prior sexual behavior, unless they are used to prove someone other than the respondent committed the alleged conduct or if they concern previous sexual activity with the respondent and are used to prove consent.

Questions or information that disclose or seeks to disclose privileged information, such as medical or psychological records.

For more information about relevant information, please refer to the Relevant Evidence section in the <u>Title IX Reporting and Grievance Procedures for Sexual Harassment and Violence</u>.

<u>Declining to Participate in Cross-Examination</u>
If a party or witness declines to be cross-examined during the hearing or is otherwise not available for cross-examination, the hearing officers may still consider any statements made by that party or witness during the investigation or hearing when determining whether the respondent is responsible for the alleged conduct.

VT002792

The hearing officers will also not draw conclusions regarding responsibility based solely on a party's or witness's absence from the hearing or decision to decline to answer questions from the hearing officers or during cross- examination.

### D. Recording

The Office of Student Conduct audio records all formal hearings. A copy of the recording is maintained as part of the case file and will be made available to the parties, upon request.

### E. Hearing Location and Virtual Participation

At the discretion of the Office of Student Conduct, a hearing may be conducted in a single physical location, with all parties present, or a hearing may be conducted virtually, with participants appearing via videoconference. If the hearing is held in person (i.e., in a single physical location), either party may request to be located in a separate room and to participate via video conference. Regardless of the participation method, the hearing participants will be able to simultaneously see and hear each other.

### F. Determination of Responsibility

After the hearing, a determination of whether a respondent is responsible for violating any policy in the *Student Code of Conduct* will be made by the hearing officers based on the information presented in the investigation report and at the hearing.

<u>Standard of Proof</u>
The university uses preponderance of the evidence to determine whether or not the respondent is responsible for the alleged conduct. This determination is made based on the information available to determine if it is more likely than not that a violation occurred.

<u>Decision Letter</u>
The hearing officer will simultaneously provide the parties the decision in writing. The decision letter will include the following information: allegations and policies charged, procedural steps taken during the grievance procedure, information used to determine the findings and their application to the policies charged, rationales for each finding, any sanctions imposed on the respondent, any remedies provided to the complainant, and information about the appeal process.

## Range of Possible Sanctions

If a respondent is found responsible for the alleged conduct, the hearing officers will make a determination regarding appropriate sanctions. One or more of the following sanctions may be imposed:

- Formal warning
- Probation
- Deferred Suspension
- Suspension
- Deferred Dismissal (i.e., deferred expulsion)
- Dismissal (i.e., expulsion)

VT002793

- Denial of privileges or associations
- Educational, Community, and Wellness Activities

When assigning sanctions, hearing officers consider the type and nature of any policy violation(s), including mitigating or aggravating factors, as well as the student's prior conduct record. Sanctions are generally cumulative in nature.

For definitions and additional information about sanctions in the Student Conduct process, please refer to the relevant sections in this document.

### Remedial Action

Following a hearing, the Director of Student Conduct shall work with the Title IX Coordinator, who will oversee any necessary remedial action to restore or preserve the complainant's equal access to the university's education programs or activities.

### Appeal Process

Both parties have the opportunity to appeal the outcome of a formal hearing in a Title IX case regardless of the outcome. Sanctions take effect immediately, pending the appellate officer's decision or the end of the appeal period.

#### A. Grounds for Appeal

Appeals are not re-hearings; therefore, appeal requests are limited to the following grounds:

- Procedural irregularity or denial of procedural guarantees
- Significant and relevant new information that was not available at the time of the hearing
- Conflict of interest or bias by the Title IX Coordinator, Investigator, or hearing officer(s), which affected the outcome
- Unduly harsh or arbitrary findings or sanctions.

Appeals submitted that do not have sufficient grounds in one of these areas will be denied.

#### B. Potential Outcomes of an Appeal

The appellate officer will review the appeal and may:

- Uphold the original decision and sanctions
- Uphold the original decision and either decrease or increase the sanction
- Vacate a finding
- Send the case back to the Title IX Coordinator for further investigation
- Send the case back to Student Conduct for a new partial or full hearing

#### C. Time Frame to Submit an Appeal

The parties have seven (7) business days from the date of the decision to submit the appeal. The date the decision is given is considered the first day of the appeal period. Appeals submitted after the deadline will not be accepted except in extenuating circumstances, as determined by Student Conduct.

VT002794

**D. Format of Appeal**

The appeal is a written request submitted by the student for a review of the original case. The student should include which grounds for appeal they believe apply, and any information the student wants considered should be included in the written document. The burden is on the appealing party to demonstrate why the finding or sanction should be altered.

**E. Notification to the Other Party**

When one party submits an appeal, the Office of Student Conduct will notify the other party and provide them with an opportunity to review the appeal and submit a written statement in response, which will be included in the appeal documentation.

**F. Appellate Officers**

An appellate officer will be designated by the Assistant Vice President for Student Affairs, who serves as the university's Chief Appellate Officer. All appellate officers are external to the Office of Student Conduct and Title IX. When they are designated to review a case, the Assistant Vice President will ensure they do not have conflicts of interest or bias and are, therefore, able to review the case objectively.

**G. Appeal Decision Letter**

The appellate officer will issue a decision on the appeal in writing to both parties simultaneously. This notification will include a rationale for the decision.

## Appendix IV: Additional Information Regarding the Hazing Policy

Hazing is a criminal offense in the Commonwealth of Virginia, as defined in § 18.2-56 in the Code of Virginia, and is prohibited at Virginia Tech in all forms. This policy is based on the proposition that students are entitled to be treated with consideration and respect at all times. It applies to all student organizations and individuals.

The *Student Code of Conduct* defines hazing as follows:

> *Any mental or physical requirement, request, or obligation placed upon any person that could cause discomfort, pain, fright, disgrace, or injury; that is personally degrading; or that violates any federal, state, or local statute or university policy, the willingness of an individual to participate in such activity notwithstanding.*

Hazing shall include, but not be limited to, forcing, compelling, requiring, encouraging, or expecting, whether direct or implied, any individual to participate in any of the following actions or activities. Hazing also includes soliciting, directing, aiding, or otherwise participating actively or passively in these acts:

- Physical Acts

    - Encouraging or requiring persons to consume alcohol or other substances regardless of the age of the participant.

    - Encouraging or requiring that a person do or submit to any act that will alter his or her physical appearance in any significant degree for any substantial period of time (e.g. burning, branding, tattooing, using makeup, paint or markers on a person, or shaving the head or body).

VT002795

▸ Encouraging or requiring activities that disrupt a person's normal schedule. A normal schedule includes three reasonably spaced meals per day, the opportunity for sufficient rest at night (at least six full hours) and reasonable time for personal hygiene.

▸ Encouraging or requiring a person to engage in physical activity of unusual kind or duration, such as: calisthenics, overly difficult work assignments, activities that may be excessive for a person, activities that require a person to remain in a fixed position for an extended period of time, binding or restricting an individual in any way that would prohibit them from moving on their own, confining a person or exposing participants to uncomfortable elements like in environments that are too hot, cold, noisy, small, or threatening/intimidating.

▸ Hinting, pretending, or misleading a prospective member into believing that they will be hit, hurt, or physically altered.

▸ Encouraging or requiring acts that are or seem to be dangerous.

- <u>Psychological Acts</u>

  ▸ Encouraging or requiring a person to pretend to or actually violate a law.

  ▸ Encouraging or requiring an individual to obtain or possess items or complete tasks in an unlawful manner (i.e. for a scavenger hunt).

  ▸ Verbally abusing prospective members. Examples include but are not limited to yelling or screaming; calling individuals demeaning names; booing, hissing, or demeaning individuals when they make mistakes.

  ▸ Encouraging or requiring a person to perform acts of servitude, perform personal errands for others, or engage in activities that are demeaning.

  ▸ Misleading prospective members in an effort to convince them that they will not become members unless they complete tasks, follow instructions, or act in a certain way.

  ▸ Misleading prospective members into believing that they will be hurt during induction or initiation.

  ▸ Encouraging or requiring a person to publicly carry objects or wear apparel that is abnormal, not normally in good taste, conspicuous and/or indecent.

  ▸ Encouraging or requiring a person to appear nude or reveal body parts.

  ▸ Encouraging or requiring an individual or group to remain in a certain place or transporting them to a location without their knowledge (e.g. taking a person on a road trip or excursion to an unknown destination or kidnapping).

  ▸ Parading individuals in public areas, transporting individuals in a motor vehicle while blindfolded, or privately conducting blindfolding activities that serve no constructive purpose.

VT002796

&#9656;    Requiring an individual to "pledge" or "associate" for a period of unusual length (more than 10-12 weeks) for reasons other than achieving academic requirements or extraordinary circumstances.

As it is impossible to anticipate every situation that could involve hazing, this list does not, and cannot, encompass every circumstance that will cause the institution to discipline for hazing. This policy is not intended to prohibit the following conduct:

- Customary athletic events, contests, or competitions that are sponsored by the institution or the organized and supervised practices associated with such events.

- Any activity or conduct that furthers the goals of a legitimate educational curriculum, extracurricular program or military training program, as approved by the institution.

**Note: An individual may not consent to being hazed, and their voluntary or willful participation in hazing activities will not be considered as a defense against a violation of the institution's hazing policy by an individual or organization.**

University Reporting, Investigation, and Adjudication: The university encourages individuals to report any potential hazing activities. The initial report of a suspected violation may be reported in person, by phone or by electronic communication, and may be done anonymously.

Alleged violations of this policy can be reported through an online reporting system or to the following offices:

- Student Conduct
- Student Engagement and Campus Life
- Fraternity and Sorority Life (for Greek organizations)
- Recreational Sports (for club sports)
- Virginia Tech Police Department
- Virginia Tech Corps of Cadets

Credible and sufficiently detailed reports of hazing will be referred to Student Conduct for further investigation and potential adjudication. Both individuals and organizations may be held responsible for their actions and participation in incidents of hazing. If an investigation concludes that an individual or individuals directed, engaged in, aided or otherwise participated in, actively or passively, an incident of hazing, disciplinary action may be imposed against the individual(s). If the investigation concludes that an organization knowingly permitted, authorized, or condoned hazing, disciplinary action may be imposed against the entire organization.

Reporting to the Commonwealth's Attorney: Per § 18.2-56 in the Code of Virginia, the university must report incidents of hazing that cause bodily injury to the Commonwealth's Attorney, who may take separate action.

VT002797