UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

MASON ORTEGEL,

    *Plaintiff*,

v.

VIRGINIA POLYTECHNIC
INSTITUTE AND STATE
UNIVERSITY, *et al.*,

    *Defendants*.

Case No.: 7:22-cv-00510

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT**

    At oral argument, the Court requested supplemental briefing on whether Mr. Ortegel was treated differently than a similarly situated female student for purposes of his Equal Protection Claims. Mr. Ortegel submits this brief to show that he was similarly situated to Jane Roe, a female student who notified the University that she felt she was victimized by Mr. Ortegel. Because the University treated Mr. Ortegel less favorably – through, *inter alia*, telling Mr. Ortegel he could not file a complaint when he made similar allegations against Jane Roe – his Equal Protection claim survives.

**SUPPLEMENTAL STATEMENT OF DISPUTED MATERIAL FACTS**

    Defendant Dilworth, and Virginia Tech more generally, treated Mr. Ortegel less favorably than Jane Roe, summarily dismissing Mr. Ortegel's allegations of sexual misconduct but vigorously investigating and prosecuting Jane Roe's. As a

1

foundational matter, both students were subject to the same sexual misconduct policy which prohibited sexual contact with incapacitated persons. Def. Ex. 1. As to both students, the Title IX Office and Title IX Coordinator maintained a policy of receiving both "reports" and "formal complaints" of sexual harassment. *Id.*, at §§3.0, 3.1; Def. Ex. 3, at 17:2-18:9. A "report" would trigger the obligation of the University to provide supportive measures regardless of whether a student filed a "formal complaint" initiating the grievance procedure. *Id.*; 34 C.F.R. §§106.30, 106.44(a), 106.45(b) (defining "formal complaint" and generally providing that while a recipient may not be "deliberately indifferent" to sexual harassment with or without a formal complaint, it need only follow the federal grievance procedure in response to a formal complaint). A student may "file" a formal complaint, initiating the grievance process, and a Title IX Coordinator may also "sign" a formal complaint even if none is filed by the complaining student. 34 C.F.R. §106.30. Defendant Polidoro had "signed" formal complaints during her tenure as Title IX Coordinator at Virginia Tech, without having had a student-filed formal complaint. Def. Ex. 3, at 18:14-19:1.

When Jane Roe reported sexual misconduct, the University immediately jumped into action. Mr. Hardy, an investigator working in the Title IX Office, immediately reached out to Jane Roe asking her for an in person conversation, and proposing that an employee from the Women's Center[1] attend to support her. Def. Ex.

---

[1] It is undisputed that Virginia Tech does not maintain any "Men's Center" and that there have been "lots of discussions" about changing the name of the Women's Center. Def. Ex. 3 at 72:13-73:14. Still, despite those "discussions" (given that Virginia Tech purports to serve both male and female students through the Women's Center), the University has evidently chosen to keep the "Women's Center" name.

2

7. When Mr. Ortegel reported sexual misconduct to Mr. Hardy and indicated that he wanted to file a complaint, by contrast, Mr. Hardy told him that he was not able to file a complaint because Jane Roe had already filed one against him. Def. Ex. 9, at 179:5-180:5. Mr. Hardy denies this occurred and affirms (correctly) that the policy does not prohibit respondents from filing a formal complaint. Def. Ex. 10, ¶¶10-12. Following the meeting, Mr. Hardy made a superficial attempt at following up with Mr. Ortegel for more information on his allegations against Jane Roe, bearing no resemblance to the friendly request for an in-person meeting with a support person from the Women's Center present. Compare Def. Ex. 7; with Pl. Ex. J. There is no evidence that Mr. Hardy ever referred Mr. Ortegel's report to Defendant Polidoro or the Women's Center. Mr. Ortegel did not file a formal complaint.

The University obviously proceeded with an investigation and hearing on Jane Roe's formal complaint. It appointed Dashawn Dilworth as hearing officer after knowing of his public anti-male statements. *See* ECF No. 60, at 5-9. Defendant Dilworth had experience hearing other Title IX cases, including female students who claimed they were too intoxicated to consent, like Mr. Ortegel. *See* Def. Ex. 17, at 103:1-105:25. He never (or at least has no memory of ever having) found that a female student was not credible because of her level of intoxication. *Id.* But that is exactly what he did with Mr. Ortegel – he wrote in his decision, "Mr. Ortegel's level of intoxication on the night in question makes his recollection of the evening less credible." Def. Ex. 15, at 10. He applied a different standard to female and male students expressing the same experience of being too intoxicated to sexual activity.

3

The differences continued after the hearing. Mr. Ortegel stated clearly in his appeal of being found responsible that he was the victim of sexual contact while he could not consent. Def. Ex. 20, at 1-2. Defendants made no attempt to contact Mr. Ortegel about his unequivocal allegation that he was the victim of sexual misconduct in response to his January 27, 2022 appeal. Defendants did not contact him about this allegation for eight months and not until he sought financial assistance on September 5, 2022, having lost his scholarship. Def. Ex. 29, at 5-9. In response to Mr. Ortegel's September 5, 2022 inquiry, the University sent two letters, dated September 8 and September 20, 2022. *Id.* The University never suggested to Mr. Ortegel that he could file a formal complaint and it did not engage in the kind of sympathetic back and forth communication seen in Mr. Hardy's emails with Jane Roe. *Id.*; Def. Ex. 7. Mr. Ortegel withdrew from school around the same time, with the University never opening any sort of investigation or inquiry (let alone Defendant Polidoro "signing" a formal complaint) into whether Mr. Ortegel was the victim of sexual misconduct.

## ARGUMENT

To succeed on summary judgment on Mr. Ortegel's equal protection §1983 claims, Defendants must show that no reasonable jury could find that "he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021) (articulating pleading standard for equal protection claims); *see also Radwan v. Manuel*, 55 F.4th 101, 133 (2d Cir. 2022)

4

(whether student comparators were similarly situated was a fact issue for the jury). In the student discipline context, a plaintiff can show he was treated less favorably than a similarly situated female student by showing that the university "had credible information that both students had potentially violated the University's sexual misconduct policy … [and] chose not to pursue disciplinary action against the female student, but only against the male student." *See Doe v. Miami Univ.*, 882 F.3d 579, 596 (6th Cir. 2018); *cf. Sheppard*, 993 F.3d at 237 (finding that two students were not similarly situated when one was charged with larceny and one with assault). Following *Sheppard*, at least one district court in the Fourth Circuit held complaints of two violations of the same Title IX policy to be close enough similarity to render the students similarly situated. *Doe v. Marshall Univ. Bd. of Governors*, 683 F. Supp. 3d 522, 540 (S.D.W. Va. 2023) (finding two students were similarly situated where "Jane Roe filed a Title IX complaint against Plaintiff for sexual assault and, thereafter, Plaintiff filed a Title IX complaint against Jane Roe for retaliation").

Here, Mr. Ortegel and Jane Roe were similarly situated because they both raised allegations of sexual misconduct under the same policy. Like the plaintiff in *Miami Univ.*, "[Mr. Ortegel], while extraordinarily inebriated, apparently engaged in non-consensual [sexual misconduct]. Jane, apparently mostly sober, purportedly kissed [Mr. Ortegel] when he was incapacitated and unable to consent." *Miami Univ.*, 882 F.3d at 596-597. Mr. Ortegel was treated less favorably by the University through its complete failure to follow up on any of his reports of sexual victimization, beginning with Mr. Hardy and continuing through his withdrawal from school. At the

5

same time, the University evidently encouraged Jane Roe to report and file a formal complaint, which it then investigated to the fullest, resulting in discipline against Mr. Ortegel. The difference could not be starker, and the difference continued through the remainder of Mr. Ortegel's enrollment: the University never once responded to Mr. Ortegel in a way that would prompt a report or formal complaint, in contrast to Mr. Hardy's suggestion of an in person meeting with a Title IX investigator (himself).

The differential treatment also existed at the hearing, where Defendant Dilworth found Mr. Ortegel less credible because of his intoxication but had never once employed that reasoning with respect to a female student articulating the same point. *See* Def. Ex. 17, at 103:1-105:25. Mr. Ortegel was therefore similarly situated to all of those female students for whom Defendant Dilworth evaluated their credibility, and yet Mr. Ortegel was treated less favorably because he alone had a negative credibility inference drawn from his intoxication. *Id.*

Given this consistent differential treatment between Mr. Ortegel and Jane Roe (and the comparative female students whose credibility was evaluated by Defendant Dilworth), a reasonable jury could find that Mr. Ortegel was treated less favorably than similarly situated female students. And for all the reasons set forth in Mr. Ortegel's memoranda in opposition to Defendants' motion for summary judgment, which Mr. Ortegel incorporates here by reference, a reasonable jury could find that the differential treatment by Defendants was caused by Mr. Ortegel's sex. *Miami Univ.*, 882 F.3d at 597 (analyzing the "discriminatory animus" element together with

6

the Title IX claim). Indeed, there is no other relevant differentiating factor between him and the female students to which he points.

## CONCLUSION

Every step of the way, Jane Roe was encouraged. Her complaint was investigated and heard. Defendants applied a radically different standard to Mr. Ortegel's allegations of sexual misconduct, never once offering to receive a formal complaint or advance his report of sexual misconduct in any way. Worse, in disciplining Mr. Ortegel, Defendant Dilworth applied a different standard than any he had applied to a female claiming she was too intoxicated to consent. Defendants now ask the Court to excuse them for these errors by finding that the female students were somehow not similarly situated. The Court should decline that invitation and deny summary judgment.

Dated: June 23, 2025

Respectfully submitted,

/s/     Benjamin F. North
Benjamin F. North, (VSB No. 97439)
Lindsay R. McKasson, (VSB No. 96074)
Katie L. Raymond, *pro hac vice*
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
ben@binnall.com
lindsay@binnall.com
katie@binnall.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on June 23, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which provided electronic service to all counsel of record.

/s/   Benjamin F. North
Benjamin F. North

*Counsel for Plaintiff*